THE ATTORNEY GENERAL
OF TEXAS
AUSTIN 11, TEXAS


Gerald C. Mann
XXXXXXXX XXXXXXXXXXXXXXXXXx
ATTORNEY GENERAL

Honorable G. A. Walters
County Attorney
San Saba County
San Saba, Texas

Opinion No. O-2849
Re: Parks - Commissioners' Courts

Dear Sir:

Your request for opinion has been received and carefully considered by this department. We quote from your request as follows:

"Our commissioners court issued a warrant for $10,000 for paving around the square, the courthouse; and four per cent tax levied to pay interest and principal and create a sinking fund to all warrants and pay interest. Now, there is sufficient money accumulated in this fund after the paving was completed to render all warrants and pay interest and leave a surplus of about $2,400 to the credit of the permanent improvement fund. The City of San Saba owns the premises desired to be improved for a public park. The city is unable to finance these improvements to supplement the government funds promised for the project. The city asked the county to finance this improvement on these premises. My advice to the commissioners court was that they would not be permitted to invest this $2,400 in such improvements on the city property. I advised them to secure a transfer from the city to the county of these premises and then the county could use this $2,400 for these improvements and would not be required to comply with Art. 6078 above referred to by levying a tax and collecting the same by submitting to the tax paying voters of the county a special election called for that purpose requiring that two-thirds of the majority of the tax paying voters of said county favor such tax.

"Now, what the commissioners court wants to know is whether or not this $2,400 can be used by

the county for improving this property belonging to the city without having the same transferred to the county? Second, if the city does or does not transfer the property, will the county be required to submit the matter at a special election and bonds issued for that purpose regardless of the fact that the county now has on hand this $2,400 to the credit of the improvement fund?

"I am unable to find any statutory provisions or decisions by the court upon which to base my opinion and of course I may be wrong. We are very anxious to have this part improved and this seems to be the only way that it can be done if authorized."

Article 6078, Vernon's Annotated Texas Civil Statutes, reads as follows:

"Each commissioners court is authorized to levy and collect a tax not to exceed five cents on each $100 of assessed valuation of the county for the purchase and improvement of lands for use as county parks which shall consist of not more than one hundred acres, and shall not exceed more than four in any one county. No such tax shall be levied and collected until the proposition is submitted to and ratified by the property tax-paying voters of the county at a general or special election called for that purpose, provided, a two-thirds majority of the property taxpaying voters of such county, at an election held for such purpose shall determine in favor of said tax. If said court desires to establish two or more of such county parks they shall locate them in widely separated portions of the county. Said court shall have full power and control over any and all such parks and may levy and collect an annual tax sufficient in their judgment to properly maintain such parks and build and construct pavilions and such other buildings as they may deem necessary, lay out and open driveways and walks, pave the same or any part thereof, set out trees and shubbery, construct ditches or lakes, and make such other improvements as they may deem proper. Such parks shall

remain open for the free use of the public
under such reasonable rules and regulations
as said court may prescribe."

Article 6081e, Sections 1, 2 and 3, Vernon's Anno-
tated Texas Civil Statutes, reads as follows:

"Sec. 1. That any county or any incorpo-
rated city of this State, either independently
or in cooperation with each other, or with
the Texas State Parks Board, may acquire by gift
or purchase or by condemnation proceedings,
lands to be used for public parks and playgrounds,
such lands to be situated in any locality in
this State and in any sized tracts deemed suit-
able by the governing body of the city or
county acquiring same; provided, however, that
lands to be acquired by any such city or county
for said purposes may be, in the discretion of
the governing body thereof, situated within
the State, either within or without the boundary
limits of such city, but within the boundary
limits of said county and within the limits of
said county wherein said city lies or is situated.

"Sec. 2. To pay for lands for parks pur-
poses, an incorporated city and/or county may
issue bonds, and may levy a tax not exceeding
Ten (10) Cents on the One Hundred Dollars ($100)
valuation of taxable property in such city
and/or county to pay the interest and provide
a sinking fund to retire such bonds, the issu-
ance of such bonds, and the collection of taxes
in payment thereof to be in accordance with the
provisions of Chapter 1, Title 22, Revised
Civil Statutes of 1925, governing the issuance
of bonds by cities, towns, and/or counties in
this State; this section shall be construed
to authorize the levying of said tax not ex-
ceeding Ten (10) Cents on the One Hundred
Dollars ($100) of valuation notwithstanding
the provisions of Article 6080 of the Revised
Civil Statutes of 1925.

"Sec. 3. All parks acquired by authority
of this Act shall be under the control and
management of the city or county acquiring same
or by the city and county jointly, where they

have acted jointly in acquiring same, pro-
vided that the Commissioners' Court and the
City Commission or City Council may, by
agreement with the State Parks Board, turn
the land over to the State Parks Board to
be operated as a public park, the expense
of the improvement and operation of such park
to be paid by the county and/or city, accord-
ing to the agreement to be made between such
municipalities and the State Parks Board.

"All counties and incorporated cities
are authorized to levy a tax of not exceed-
ing five (5) cents on the One Hundred
($100.00) Dollars property valuation to
create a fund for the improvement and opera-
tion of such parks."

We quote from 11 Texas Jurisprudence, page 609, as
follows:

"The Constitution prescribes the max-
imum rate of taxes for general purposes, for
roads and bridges, for juries, and for perm-
anent improvements, respectively. The monies
arising from taxes levied and collected for
each of the enumerated purposes are consti-
tutional funds; and the commissioners' court has
no power to transfer money from one fund to
another or to expend, for one purpose, tax
money raised obstensibly for another purpose.

"The immediate purpose of the provision
is to limit the amount of taxes that may be
raised for these several purposes, respectively;
but it is also designed to inhibit excessive
expenditures for any such purpose, and to re-
quire that any and all monies raised by taxa-
tion for any purpose shall be applied to that
particular purpose and to no other."

The above quotation from Texas Jurisprudence is
supported by the cases of Commissioners' Court of Hender-
son County vs. Burke, 262 SW 94; Ault vs. Hill County, 116
SW 359; Section 9, Article 8 of the State Constitution; and
Carroll vs. Williams, 202 SW 504.

It is a well settled principle of law that a
county and its commissioners' court has no powers or duties

except those which are clearly set forth and defined in the Constitution and pertinent statutes. Hill County vs. Hamilton, 273 SW 292; Edwards County vs. Jennings, 33 SW 585, and cases therein cited too numerous for repetition herein.

The above quoted statutes provide the manner and method by which counties may establish and finance county parks, either independently or in cooperation with the cities. It is a well recognized principle of law that where the Legislature prescribes a definite, certain and fixed method of procedure for a city or county to follow in the execution of its governmental functions other methods are by implication of law excluded. Foster vs. City of Waco, 255 SW 1104 (Sup.Ct.).

We quote from Opinion No. 0-905 of this department as follows:

"Article 6078 refers exclusively to parks bought and maintained by a county, and Article 6080 refers exclusively to parks bought and maintained by a city, any authority for the purchase of a park by the county to be maintained by the city must come if at all from Article 6081e, Section 3 of this latter article provides, specifically, that park land acquired under its provisions shall be managed and controlled by the city or county acquiring same. If the park is acquired jointly by the city and county, they must jointly control it. No authority is to be found here for acquisition by the county and management and control by the city, or vice versa."

We quote from opinion No. 0-2140 of this department as follows:

"It is, therefore, our considered opinion that a commissioners' court does not have authority to make expenditures from the permanent improvement fund for the purpose of improving county parks, in the absence of a compliance with one of the above quoted articles. (Articles 6078 and 6081e). Since neither of these statutes were complied with, it naturally follows that you cannot legally approve the warrants authorized by the commissioners' courts to be drawn on said permanent improvement fund in payment of the costs of the contemplated improvements."

We enclose herewith copies of Opinions Nos. 0-905 and 0-2140 of this department.

In view of the foregoing authorities you are respectfully advised that it is the opinion of this department that the $2,400.00 in the permanent improvement fund of the county may not be used for the improvement of said park regardless of whether or not said park is transferred to the county and regardless of whether or not an election is had to vote bonds or vote a tax for park purposes.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By     Wm. J. Fanning
Assistant

WJF:AW:Bt

APPROVED DEC. 3, 1940

Gerald C. Mann
Attorney General of Texas

APPROVED Opinion Committee
by BWB, Chairman